

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 18, 2024

**BY ECF AND EMAIL**
Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    **United States v. Mark O'Mara**, 23 Cr. 72 (RMB)

Dear Judge Berman:

In advance of the defendant's probation hearing, scheduled for December 19, 2024, the Government respectfully writes in opposition to the defendant's letter request of December 17, 2024.  (Dkt. No. 52 ("Def. Ltr.")).  The defendant's extraordinary request has no basis in law, is unsupported by the facts, and is wholly improper.  In effect, the defendant asks the Court to (i) make certain "factual findings" and draw legal conclusions immaterial to this criminal matter that amount to an advisory opinion or an improper judicial endorsement of the defendant; (ii) communicate to a federal agency through such findings that the agency's administrative and business decision relating to the defendant, made in an unrelated administrative proceeding and pursuant to the Code of Federal Regulations, should be overturned; and (iii) effectively vouch for the defendant in his effort to obtain federally funded disaster relief projects and advocate in support of the defendant's appeal of FEMA's administrative and business decision.  In other words, without legal authority, context, facts, and jurisdiction, the defendant asks the Court to act as both his fact witness and character witness, and to provide unsanctioned judicial review of a separate FEMA administrative proceeding.  The defendant's request should be denied.

**BACKGROUND**

**I.    This Criminal Case: The Defendant's Crimes, Guilty Plea, Sentencing, and Probation**

For multiple years—from approximately 2013 through 2020—the defendant engaged in several schemes to defraud the City of New York (the "City") of hundreds of thousands of dollars of federal disaster relief funding intended to be used for Hurricane Sandy relief and recovery. (Presentence Investigation Report, dated November 1, 2023 ("PSR") ¶¶ 11-24).  As a disaster relief consultant hired with federal funds to assist the City, the defendant used his position to fraudulently obtain hundreds of thousands of dollars to which he was not entitled.  (*Id.*).  The defendant also lied about his conduct and obstructed justice by destroying incriminating evidence against him, including his emails and text messages.  (*Id.* ¶ 26).  Specifically, the defendant, among other things: (1) lied about his lodging costs, defrauding the City and obtaining federal funds to which he was not entitled; (2) lied about his residency so that the City would use federal funds to pay for

Manhattan housing for his entire family for years, despite the fact that he had purchased his own apartment in the City; (3) submitted false documents to his employer and the City, including a fake lease and a fake arms'-length letter; (4) conspired with his colleague and others to purchase property in a co-conspirator's name to conceal the fact that the property—an apartment adjacent to the one he owned, which he planned to combine into one unit—was also intended for the defendant; (5) lied to his employer and to the City when the City began investigating his misrepresentations and fraud schemes; and (6) destroyed his own emails and communications reflecting his involvement in the above frauds. (*Id.* ¶¶ 11-24).

On February 7, 2023, the defendant pleaded guilty to Information 23 Cr. 72 (RMB) (the "Information"), pursuant to a cooperation agreement with the Government. (*Id.* ¶ 7). The defendant pleaded guilty to: (1) federal program fraud, in violation of 18 U.S.C. §§ 666 and 2; (2) wire fraud in connection with a presidentially declared major disaster, in violation of 18 U.S.C. §§ 1343 and 2, and 42 U.S.C. § 5122(2); (3) conspiracy to commit federal program fraud and wire fraud, in violation of 18 U.S.C. § 371; and (4) destruction of evidence, in violation of 18 U.S.C. § 1519.

On November 29, 2023, the defendant was sentenced. (Dkt. 31). The defendant's applicable range under the United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") was 21 to 27 months' imprisonment to be followed by up to five years of supervised release. (PSR at 30). The Probation Office recommended a sentence of three years of probation. (*Id.*). The Government submitted a letter, pursuant to Section 5K1.1 of the Guidelines, that discussed the defendant's offense conduct, the information provided by the defendant to the Government, and the Government's use of the defendant's information. (Dkt. 21). The Government wrote that "although the Government had sufficient evidence to charge both O'Mara and [co-defendant Walter] Melnick before O'Mara's proffers with the Government, information provided by O'Mara enabled the Government to, among other things, fully understand the nature of Melnick's and CC-1's participation in the second fraud scheme, which resulted in fair and prompt dispositions with respect to Melnick and CC-1." (*Id.* at 1-2, 8).[1] The Government obtained evidence supporting some, but not all, of O'Mara's information and conclusions. (*Id.* at 2). The Court sentenced the defendant to 30 months of probation. (Dkt. 31). The Court entered consent orders of restitution in the amount of $224,687.26 and forfeiture in the amount of $258,900. (Dkts. 27, 30, 31).

At the defendant's sentencing, the Court advised the defendant, in sum and substance, that the defendant would need to make certain lifestyle changes, particularly in light of the fact that he was paying two mortgages and had a negative monthly cash flow of $18,800 per month. (Dkt. 40 ("11/29/23 Sent. Tr.") at 19-20; *id.* at 5-6). The defense agreed. (*Id.* at 19-20). Prior to his arrest, the defendant's income was substantial: approximately $656,382 in 2018, approximately $925,743 in 2019, approximately $1.7 million in 2020, approximately $472,000 in 2021, and approximately $326,000 in 2022. (PSR ¶ 84). At the time of the defendant's sentencing, the defendant had amassed significant assets, owned one apartment in downtown Manhattan and paid the mortgage on an adjacent apartment that he effectively owned through his in-laws. (11/29/23 Sent. Tr. at 19-20; PSR ¶ 84). For some time prior to sentencing, the defendant was aware that he would likely

---

[1] The Government also informed the Court of some other information provided by the defendant which the Government used to investigate but which did not ultimately lead to any charges.

be debarred by FEMA for a period of time (here, two years), and that he would not be able to secure the same kind of lucrative disaster-relief employment post-conviction.

Since the defendant's sentencing, he has abided by the terms of his probation. On October 29, 2024, with no objection from the Probation Office, the Court indicated that it planned to terminate the defendant's term of probation on December 31, 2024. As to early termination, the Government recognized the defendant's full compliance with the terms of his supervision, but took no position in light of well-established law that early termination is not warranted where a defendant simply complies with the terms of his supervision. *See, e.g.*, *United States v. Rusini*, 105 F. Supp. 3d 291, 292-93 (S.D.N.Y. 2015) ("Early termination is not warranted where a defendant did nothing more than that which he was required to do by law. . . . A defendant's faithful compliance with the terms of his supervision does not, by itself, entitle him to modification or termination of his term of [supervision]. Rather, full compliance with the terms of supervised release [or probation] is what is expected of [the defendant] . . . and does not warrant early termination.") (citing cases) (internal quotation marks and citations omitted).

## II.     The Defendant's Administrative Matter Before FEMA and His Instant Request

Pursuant to Executive Order 12549 (1986) and 2 C.F.R. §§ 180, 3000, as a federal agency, FEMA is authorized to debar or suspend individuals, like the defendant, from participating in programs and activities involving federal funds and programs.[2] FEMA's debarment authority is an "administrative tool used to protect the integrity of federal programs" that "ensures [that] federal programs conduct business only with responsible persons." FEMA FAQs. FEMA's authority to exclude firms or individuals from receiving federal contracts or assistance based on various types of misconduct is one way in which the federal government seeks to ensure that agencies are awarding contracts to responsible sources.[3] Debarments are "business decisions" that may be based on "convictions, civil judgments, or fact-based cases involving crimes, contract fraud, embezzlement, theft, forgery, bribery, poor performance, non-performance or false statements as well as other causes." FEMA FAQs. Consistent with the applicable federal regulations, FEMA has an administrative system and process for imposing suspensions and debarments.[4]

The Government understands that, on or about January 2, 2024, FEMA debarred the defendant for two years—through on or about January 2, 2026—based on his guilty plea, his criminal convictions, and other conduct, among other things. It appears that the defendant seeks to administratively appeal FEMA's decision.

---

[2] FEMA Suspension & Debarment: Frequently Asked Questions, FEMA, available at https://www.fema.gov/sites/default/files/2020-07/fema_suspension-and-debarment_trifold.pdf (last visited Dec. 17, 2024) ("FEMA FAQs").

[3] U.S. Government Accountability Office, Suspension and Debarment: Some Agency Programs need Greater Attention, GAO-11-739 (Oct. 6, 2011), available at https://www.gao.gov/products/gao-11-739.

[4] *See, e.g.*, How to Appeal FEMA's Decision: A Step-by-Step Guide, FEMA, available at https://www.fema.gov/blog/how-appeal-femas-decision-step-step-guide (last visited Dec. 17, 2024).

Yesterday, the defendant asked the Court by letter to make certain "factual findings" relating to the defendant's administrative appeal of FEMA's debarment decision. Specifically, the defendant asks the Court to factually attest and legally conclude that: the defendant is "presently a responsible individual," he "does not presently pose a threat to the public interest," and "[a]llowing [him] to resume disaster recovery consulting work . . . aligns with both public and federal interests." (Def. Ltr. at 2). It appears that the defendant asks the Court to attest to these conclusions based on his compliance with the terms of his probation.

## **DISCUSSION**

The defendant's improper request should be denied.

First, there is no legal basis for the defendant's highly unusual request—and the defendant points to none. His request is improperly lodged in this criminal matter, in which the defendant has already pleaded guilty and has been convicted of four federal crimes. Instead, the defendant's request is clearly related to a separate administrative proceeding that is outside of this Court's present jurisdiction.

Second, the defendant's request is an inappropriate attempt to circumvent federal regulations, administrative procedure, civil procedure, and Article III by effectively asking the Court to usurp FEMA's administrative authority and opine on a wholly separate administrative matter. Should the defendant seek to challenge FEMA's debarment decision, he must administratively appeal FEMA's decision, and should he wish to challenge the decision on appeal, he can file a federal complaint against an opposing party (*i.e.*, FEMA), stating a cause of action that is within the Court's jurisdiction. That case would then be assigned to a judge in the appropriate district who would review and consider the facts and law applicable to that administrative issue. U.S. Const., Art. III § 2. Instead of following proper procedure, the defendant seeks to end-run administrative and federal rules of procedure and ask this Court for what is, effectively, an advisory opinion. Federal courts, however, do not offer advisory opinions. *Fuller v. Bd. Of Immigr. Appeals*, 702 F.3d 83, 86 (2d Cir. 2014) (holding that if it is "impossible . . . to grant any effectual relief . . . to a prevailing party," the court "must dismiss the case, rather than issue an advisory opinion"); U.S. Const., Art. III § 2. And in this criminal matter, the Court does not have jurisdiction to opine on or review FEMA's administrative decision. *Id.*

Third, even if this Court had jurisdiction over the questions raised by the defendant—which it does not—the Court is not in a position, in this criminal matter—absent a separate evidentiary hearing and legal briefing—to affirmatively make factual findings and draw legal conclusions without an evidentiary record and without considering the legal import and potential ramifications of such findings and conclusions. Rightly so; because this is not an administrative proceeding, or an appeal therefrom, the parties have neither submitted evidence to the Court nor briefed the regulations and law governing the conclusions the defendant seeks. And even if such evidence were submitted and the legal issues briefed, the Government is not the proper adversary for these administrative issues. The Court should decline to engage in fact-finding or legal analysis relating to a separate administrative decision without any evidence, context, or a dispute properly before this Court.

Finally, at its core, the defendant's request is akin to a defendant on supervised release asking the Court to call a state prosecuting office and advocate against state charges against a defendant in an entirely separate proceeding. There can be no dispute that such an action would be improper. Here, the defendant has already received the benefit of a 5K1.1 motion from the Government, the Court's generous sentence of probation, and the Court's guidance and support over the course of his term of probation. While the defendant has complied with the terms of his probation to date, that is not an extraordinary achievement for which he should be rewarded with judicial findings that he can leverage in a collateral administrative litigation—it is what is legally required of him. *Rusini*, 105 F. Supp. 3d at 292-93.

## CONCLUSION

For the foregoing reasons, the defendant's letter request should be denied.

Respectfully submitted,

EDWARD Y KIM
Acting United States Attorney
Southern District of New York

By:     /s_____
Catherine Ghosh / Jane Kim
Assistant United States Attorneys
Southern District of New York
(212) 637-1114 / 2038

cc: Samson Enzer, Esq. (via ECF)